**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 99-50610
Summary Calendar
_____

International Association of Machinists
and Aerospace Workers, AFL-CIO,

Plaintiff-Appellant,

v.

Compania Mexicana de Aviacion, S.A. de C.V.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Western District of Texas
_____

January 19, 2000

Before REYNALDO G. GARZA, EMILIO M. GARZA, and DEMOSS Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

BACKGROUND

During 1994 and 1995, representatives of the International Association of Machinists and Aerospace Workers, AFL-CIO ("IAM") and Compania Mexicana de Aviacion, S.A. de C.V., ("Mexicana") began renegotiating various provisions of the IAM-Mexicana collective bargaining agreement. By the latter part of 1997, the negotiations stalled when Mexicana insisted on a "buy out" that would enable it to outsource work currently preformed by union employees.

On January 6, 1998, at Mexicana's request, the National Mediation Board ("NMB"), under whose auspices mediation was being conducted, released the parties for a 30-day "cooling off" period. On January 30, 1998, Mexicana notified IAM that "pursuant to the Worker Adjustment and Retraining Notification Act, 29, U.S.C. Section et seq., . . . effective the 14-day period commencing April 3, 1998 Mexicana Airlines" would terminate certain employees. Although the parties continued meeting, Mexicana made its final offer to IAM on February 5,

1998.

Mexicana offered IAM an enhanced separation package in exchange for each employee's agreement to surrender all rights provided under the collective bargaining agreement and those matters discussed in the negotiations.  In February of 1998, the union members voted to approve, against IAM's advice, Mexican's separation package.  After the union members voted in favor of approval, on March 1, 1998, Mexicana terminated all IAM-represented employees.

On May 6, 1998, IAM filed suit against Mexicana, alleging that Mexicana violated the Worker Adjustment and Retraining Notification Act, 29 U.S.C. Section 2101 et seq., ("WARN Act") by discontinuing the employment of union members prior to 60 days from the January 30, 1998 lay-off notice.  Mexicana maintains that the separation package, which employees voted to accept, satisfied the requirements of the WARN Act and that employees, by approving the terms of the package, waived their rights under the WARN Act.

IAM and Mexicana filed cross motions for summary judgment.  On May 25, 1999, the district court denied IAM's motion and granted Mexicana's motion, concluding that the separation payments made to individual Mexicana employees were not an obligation under the collective bargaining agreement and that the separation payments therefore constituted valid consideration to support the individual employee's releases.  The district court also found that the negotiation included discussions about the WARN Act claims, therefore making the reference to "all matters discussed in negotiations" in the release a valid waiver of the WARN Act claims at issue.

STANDARD OF REVIEW

Courts of Appeals review summary judgments *de novo*, applying the same standard as the district courts.  Fed. R. Civ. P. 56.  If the pleadings, answers to interrogatories, admissions and affidavits on file indicate no genuine issue as to any material fact, the moving party is entitled to judgment as a matter of law.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); Fed. R. Civ. P. 56.  When the burden at trial rests on the nonmovant, the movant must

merely demonstrate an absence of evidentiary support in the record for the nonmovant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Courts consider the evidence in the light most favorable to the nonmovant, yet the nonmovant may not rely on mere allegations in the pleading; rather, the nonmovant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted. *Celotex Corp.*, 477 U.S. at 322; Fed. R. Civ. P. 56(c).

ANALYSIS

The WARN Act requires that "an employer shall not order a plant closing or mass layoff until the end of a 60-day period after the employer serves written notice of such an order" to the affected employees. 29 U.S.C. § 2102(a). An employer who violates the notice provision of the Act is required to provide "back pay for each day of violation." 29 U.S.C. § 2104(a)(1)(A). IAM asserts that the affected employees received only 27-days notice, rather than the statutorily mandated 60-days. On January 30, 1998, Mexicana issued a notice stating that it intended to terminate IAM-represented employees on April 3, 1998, but actually terminated them on March 1, 1998.

IAM's argument is unavailing for two reasons. First, the district court correctly found that the separation payments made to individual Mexicana employees were not an obligation under the collective bargaining agreement and that the separation payments constituted valid consideration to support the individual employee's releases. Under 29 U.S.C. § 2104(a)(2)(B), payments "required by any legal obligation" cannot off-set WARN Act liability. IAM contends that the separation payment was an obligation under the collective bargaining agreement and that Mexicana therefore violated the WARN Act. However, the extra benefits contained in the separation agreement exceeded any pre-existing legal duty contained in the collective bargaining

agreement.[1] Employees could have received the severance benefits regardless of their signing the releases. The separation payments went beyond the basic severance plan benefits under the collective bargaining

agreement, and thus constituted valid consideration for the release. *See Williams v. Phillips Petroleum Co.*, 23 F.3d 930, 935 (5th Cir.), *cert denied*, 513 U.S. 1019, 115 S.Ct. 582, 130 L.Ed.2d 497 (1994), (holding that once a party establishes that his opponents knowingly and voluntarily signed a release that addresses the claims at issue, received adequate consideration, and breached the release, the opponent has the burden of demonstrating that the release was invalid because of fraud, duress, material mistake, or some other defense). There is no evidence that the releases were obtained by fraud, duress or material mistake, and therefore the elements of a valid release are satisfied.

Second, the district court correctly held that the releases, which refer to "all matters discussed in negotiations," constitute a valid waiver of the WARN Act claims at issue because the negotiations included discussions about the WARN Act.[2] Neither the WARN Act nor the common law require that the release expressly mention the WARN Act for the releases to be binding. *See Williams*, 23 F.3d at 936. The releases encompass all claims related to union

---

[1] As the district court properly noted: "Under the separation package, employees received payments based on years of service, payment for accumulated sick leave, continued health and life insurance benefits, travel benefits, and other incentives. On the other hand, under the collective bargaining agreement, employees who were terminated as the result of a mass lay-off would have received a limited amount of severance pay and would not have been entitled to continued employer-paid insurance benefits, payment for sick leave, travel benefits, or lump sum pension withdrawal."

[2] The release signed by each employee states as follows:

. . . hereby acknowledge receipt of the Separation Payment from Mexicana Airlines, which payment, along with certain other benefits defined in the Mexicana Airlines Final Offer of Separation Package to United States Employees represented by IAM, extinguishes all obligations Mexicana has to me arising from the collecting bargaining agreement effective December 9, 1992 and *resolves all matters discussed in negotiations* [emphasis added] by Mexicana and IAM Lodge 142 from February 12, 1995 through February 5, 1998.

member layoffs, and any WARN Act claim would be a claim related to union member layoffs. Thus, the affected employees waived their WARN Act claims when they accepted valid releases in exchange for the enhanced separation package. *See id.* at 935 (stating that releases signed by workers in connectin with their layoffs, pursuant to which workers, in return for payment of additional benefits agreed to release their employer from all claims relating to the time of their employment or their layoffs, were valid and enforceable and precluded workers from bringing any claims for their employer's alleged failure to give proper notice of their layoffs under the WARN Act).

## CONCLUSION

Accordingly, the district court's granting of summary judgment in favor of Mexicana is AFFIRMED. The district court's denial of IAM's motion for summary judgment is AFFIRMED, and IAM's claims are dismissed with prejudice.