**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

_____

No. 00-30559

(Summary Calendar)

_____

CLINTON L CHAMBERS; GLENDA CHAMBERS; AMANDA CHAMBERS; SAMANTHA CHAMBERS; WENDY CHAMBERS

Plaintiffs - Appellants,

versus

EXXON CORPORATION, doing business as EXXON COMPANY, USA

Defendant - Appellee.

Appeal from the United States District Court
For the Middle District of Louisiana
Dist. Ct. No. 96-CV-7611-A

January 5, 2001

Before EMILIO M. GARZA, STEWART, and PARKER, Circuit Judges.

PER CURIAM:[*]

Clinton Chambers ("Chambers"), was employed by an independent contractor in Exxon's

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

Baton Rouge, Louisiana refinery from 1991 to 1996. Chambers alleges that he was exposed to benzene during the five years he worked at the refinery. In 1996, Chambers was diagnosed with chronic myelogenous leukemia ("CML"). He claims that his alleged benzene exposure at the Exxon facility caused his disease. Chambers and his family filed a third party tort action against Exxon under Louisiana Civil Code Articles 2315, 2315.3, and 2317. The district court heard the case pursuant to its diversity jurisdiction, 28 U.S.C. § 1332.

The district court excluded the testimony of Chambers' causation experts under Rule 702 of the Federal Rules of Evidence as interpreted by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, L.Ed.2d 469 (1993), when it ruled in favor of Exxon on Exxon's motion in limine. The court further held that without proof that exposure to benzene caused Chambers' CML, testimony concerning the level of Chambers' exposure to benzene was not relevant, and therefore should be excluded. Based on these rulings, the court granted summary judgment in favor of Exxon. Chambers appeals these three decisions.

We review the district court's exclusion of expert testimony for an abuse of discretion. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 143, 118 S.Ct. 512, 517, 139 L.Ed.2d 508 (1997); *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 274 (5th Cir. 1998). We review the district court's decision to grant summary judgment *de novo*. *See Int'l Assoc. of Machinists & Aeorospace Workers, AFL-CIO v. Compania Mexicana de Aviacion, S.A. de C.V.*, 199 F.3d 796, 798 (5th Cir. 2000).

In *Moore v. Ashland Chemical Inc.*, we clarified the standards that district courts should apply when determining whether to admit scientific, expert testimony. *See Moore,* 151 F.3d at 273. In doing so, we relied primarily on the Supreme Court's interpretation of Rule 702 of the Federal Rules of Evidence in *Daubert*. In *Daubert*, the Supreme Court made clear that the test for

2

determining whether expert testimony should be admitted hinges on whether the testimony is both reliable and relevant. *See Daubert,* 509 U.S. at 589-90, 113 S.Ct. at 2794-95; *Moore*, 151 F.3d at 275.

In *Moore* we summarized the five-factor test proffered by the Supreme Court in *Daubert* for determining whether an expert's "methodology is scientifically valid or reliable. The[] factors include: (1) whether the expert's theory is testable; (2) whether the theory has been submitted for publication and peer review; (3) whether a rate or margin of error applies to the technique or theory used by the expert; (4) whether standards and controls exist and are maintained under the technique or theory; and (5) whether and to what degree the theory has been accepted within the scientific community." *Moore*, 151 F.3d at 275; *see also Daubert*, 509 U.S. at 593-95, 113 S.Ct. at 2796-97. While the test provided by the Supreme Court in *Daubert* is flexible and the factors are non-exhaustive, the *Daubert* test is a useful tool for district courts to employ when assessing whether proposed expert testimony is of the type covered by Rule 702.

Upon reviewing Chambers' expert testimony, the district court concluded that the causation theories proffered by Chambers' experts were not based on valid scientific reasoning. In the face of scientifically recognized studies put forth by the defense, Chambers' experts did not present a single peer-reviewed, controlled epidemiological study in support of their contentions that exposure to benzene causes CML. In fact, Chambers concedes that epidemiological data is necessary to demonstrate causation, but notes that there is currently an absence of statistically significant epidemiological data. In *Moore* we observed that if there does not exist "an established scientific connection between exposure and illness, or compelling circumstances...an onset of symptoms, standing alone, is entitled to little weight in determining causation." 151 F.3d at 278.

3

Although Chambers' experts were willing to state that they believed that benzene exposure causes CML, the experts failed to present scientifically reliable data to undergird their assertion. Because the law does not require "a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert[,] [a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Joiner*, 522 U.S. at 146, 118 S.Ct. at 519. Accordingly, because Chambers failed to demonstrate that his experts would present reliable data that benzene caused his CML, the district court acted within its discretion when it excluded the testimony of Chambers' causation experts.

Further, because Chambers has proffered insufficient evidence to demonstrate that his CML was caused by exposure to benzene, the degree of Chambers' exposure to benzene is irrelevant, and therefore the district court did not abuse its discretion by precluding testimony from Chambers' exposure experts.

Finally, the district court properly granted summary judgment in favor of Exxon. Although the district court was required to consider the evidence in the light most favorable to Chambers, Chambers was nevertheless required to provide proof that a material issue of fact existed with regard to whether his benzene exposure was the cause of his CML. His inability to provide any reliable proof regarding this issue justified the grant of summary judgment in favor of Exxon. *See* Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Cormier v. Pennzoil Exploration & Prod. Co.*, 969 F.2d 1559, 1560 (5th Cir. 1992).

Accordingly, the district court's grant of summary judgment is AFFIRMED.

4