Anne SPEARS, Plaintiff,

v.

Jo Anne B. BARNHART,[1] Commissioner of the Social Security Administration, Defendant.

No. CIV.A. H–00–4024.

United States District Court,
S.D. Texas,
Houston Division.

March 28, 2002.

---

1. JoAnne B. Barnhart became Commissioner of Social Security on November 9, 2001. Under 42 U.S.C. § 405(g), JoAnne B. Barnhart is substituted as the defendant in this case and no further proceedings are necessary to continue this civil action.

Victor N. Makris, Attorney at Law, Bellaire, TX, for plaintiff.

Joseph B. Liken, OGC Social Sec Admin, Traci B. Davis, Special Ass't U.S. Atty., Soc. Sec. Admin./Office of Gen. Counsel, Dallas, TX, for defendant.

## MEMORANDUM AND ORDER

BOTLEY, United States Magistrate Judge.

Plaintiff Ann Spears ("Spears") brings this action seeking judicial review of the Social Security Administration's ("SSA") denial of her claim for disability insurance

benefits provided by Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 and 1383, *et. seq. See Plaintiff's Motion for Summary Judgment and Memorandum in Support* (Entries # 13 and # 14). Spears contends the ALJ improperly failed to include limitations related to her severe depression in the Psychiatric Review Technique Form ("PRTF"), the residual functional capacity assessment ("RFC"), and the hypothetical question posed to the vocational expert("VE"). Spears further asserts that the ALJ erred in failing to include limitations related to her chronic fatigue syndrome ("CFS") in the RFC assessment and the hypothetical question posed to the VE; the ALJ erred in failing to give proper weight to the medical evidence in the record; the ALJ erred in not consulting a medical expert in determining whether her impairments, singly or in combination, met the criteria of section 12.04 of the listing of impairments; and, that the evidence offered by Spears following the hearing would have materially altered the decision had it been allowed.

Defendant Jo Anne B. Barnhart, Commissioner of the Social Security Administration ("Commissioner"), urges her decision denying Spears' claim for benefits be upheld. *See Defendant's Motion for Summary Judgment and Response to Plaintiff's Motion for Summary Judgment* (Entries # 15 and # 16). The Commissioner maintains that because substantial evidence supports that Spears did not have significant functional limitations resulting from depression or any other medical condition, the ALJ did not err in declining to include any limitation related to her depression in completing the PRTF, assessing Spears' RFC, or in posing the hypothetical question to the VE. The Commissioner further contends that the ALJ addressed limitations pertaining to Spears' chronic fatigue syndrome in his decision and included limitations in the hypothetical question posed to the VE;

that the ALJ was not required to assign controlling weight to Dr. Salvato's (treating source) assessment; that consulting a medical advisor as to medical equivalence was not required; and that Spears was not prejudiced by the Appeals Council's rejection of the post-hearing evidence.

**Factual and Procedural Background**

Anne Spears is sixty (60) years of age and allegedly suffers from chronic fatigue syndrome and depression. She has past work experience as an office manager, telephone sales clerk, interior decorator, and project manager. Spears ceased working on October 3, 1995 when her employer went bankrupt. (R. 35–37). On February 7, 1997, Spears filed an application for disability insurance benefits alleging an inability to work due to her medical condition. Her claim for benefits was denied at the initial and reconsideration levels and she later requested a hearing before the ALJ. The ALJ found Spears' condition to be nondisabling and further, that she retained the residual functional capacity to perform her past relevant work. Spears requested a review of the ALJ's decision and the Appeals Council denied this request. Spears has, therefore, exhausted all administrative remedies prior to seeking judicial review and the Court has the proper authority to commence it's review. See *Sims v. Apfel,* 530 U.S. 103, 106, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000); see also 42 U.S.C. § 405(g); 20 C.F.R. § 404.981.

**The Claimant's Relevant Medical History**

In February 1994, Dr. Salvato began treating Spears and diagnosed her with CFS. Spears was later seen at Twelve Oaks Hospital in July 1996 where both an MRI and a carotid artery study were performed. The results revealed a 2 cm CFS intensity lesion in the anterior left temporal lobe. (R. 147). Dr. Hodge treated

Spears at this time, noting that the lesion did not demonstrate mass affect and that there was less than twenty-five (25) percent obstruction of the arteries. (R. 147–48).

She underwent a consultative examination given by Dr. Vicroy in April 1997. Dr. Vicroy found that although Spears met the criteria for CFS and depression, her ability to do work-related activities appeared to be mildly impaired by her depressive symptomatology. (R. 173–74). Dr. Vicroy also found that Spears had a normal range of motion in all joints and that there were no significant findings to correspond with Spear's complaints of pain. (R. 174).

Dr. Pollock, a neuropsychologist, performed a psychological consultative examination on Spears in July 1997. At this time, Dr. Pollock averred that Spears had no apparent defects in vision or hearing, no serious motor impairments, she used her hands with normal dexterity, her handwriting was legible, she had the ability to use good judgment, her thought processes were normal and her concentration and attention span were adequate. (R. 176–80). At this time, however, Dr. Pollock found Spears' diagnosis was that of major depression, chronic fatigue syndrome and the possibility of organic brain syndrome. Dr. Pollock noted in his evaluation that this report was consistent with Dr. Salvato's findings. (R. 180).

In September 1997, Spears was examined by staff reviewing physicians, Drs. Gilliland and Buell. (R. 245–265). Dr. Gilliland performed a psychiatric evaluation on Spears and determined that she had a severe impairment which did not meet or equal a listed impairment. Dr. Gilliland's disposition of Spears' condition was based on section 12.04 of the listing of impairments. His findings revealed a disturbance of mood, major depression, and difficulty concentrating. (R. 248). Spears'

mental and physical residual functional capacities were also assessed at this time. Dr. Gilliland found evidence of some moderate limitations when assessing her mental RFC and that Spears retained the ability to do unskilled tasks. (R. 254, 256). In assessing her physical residual functional capacity, Dr. Buell determined that Spears could lift twenty (20) lbs occasionally, ten (10) lbs frequently, stand or sit about six (6) hours in an eight-hour workday, and was unlimited in her ability to push or pull. (R. 258–59). Her level of pain was noted as mild to moderate, although the evaluator could find no corresponding significant medical findings. (R. 260). Spears' range of motion in all joints was normal and there was concern of over-medication at this time.

A rehabilitative evaluation of Spears in July 1998 by Dr. Rosenthal revealed a normal gait, no ataxia, normal motor and sensory testing, normal skin and her cranial nerves were intact. (R. 278–279). Dr. Rosenthal found that Spears appeared to be in good health and had no trouble speaking, hearing or handling objects. An x-ray was taken of her right shoulder during this examination. (R. 280). The results evinced a normal shoulder with minimal degenerative arthritis.

## I. ANALYSIS

### Standards of Review–The Motion for Summary Judgment

A federal trial court's grant of summary judgment is reviewed *de novo*, viewing all facts in the light most favorable to the non-moving party. See *Reeves v. Sanderson Plumbing Prods., Inc.* 530 U.S. 133, 135, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Merritt–Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir. 1999). Summary judgment is proper if there is no genuine dispute as to any material fact and the moving party is entitled to

judgment as a matter of law, thereby, alleviating the necessity, in this instance, of reversing and vacating the administrative decision or of a remand for further administrative proceedings. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also* FED. R. CIV. P. 56(c); *Colson v. Grohman,* 174 F.3d 498, 506 (5th Cir.1999); *Ragas v. Tennessee Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir.1998). Where both parties move for summary judgment, as to each party's motion, all inferences on summary judgment must be drawn in favor of the non-moving party, to the extent that if there appears to be some evidentiary support for the disputed allegations, that motion must be denied. *McAllister v. R.T.C.,* 201 F.3d 570, 574 (5th Cir.2000). Once the summary judgment motion is properly supported, the burden shifts from the movant to the adverse party, who may not rest on mere allegations or denials, but must set forth specific and supported material facts, of significant probative value, to preclude summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Int'l Ass'n of Machinists & Aerospace Workers v. Compania Mexicana de Aviacion,* S.A. de C.V., 199 F.3d 796, 798 (5th Cir.2000); *Union Planters Nat'l Leasing, Inc., v. Woods,* 687 F.2d 117, 119 (5th Cir.1982). Only upon a showing that there remain no issues as to any material facts, which may be gleaned from reviewing the pleadings, answers to interrogatories, admissions and affidavits on file, will summary judgment be allowed. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (en banc).

**The Administrative Determination**

■ A review of the Commissioner's denial of disability benefits is limited to determining whether the decision is supported by substantial evidence, and further, whether proper legal standards were utilized in evaluating the evidence. *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990); *Loza v. Apfel,* 219 F.3d 378, 389 (5th Cir.2000). Substantial evidence means that which is more than a mere *scintilla,* but less than a preponderance; and, it is evidence of such relevance that a reasonable mind would accept it as adequate to support the conclusion reached. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). The Court's role is to scrutinize the entire record to ascertain whether substantial evidence supports the Commissioner's findings. *Hollis v. Bowen,* 837 F.2d 1378, 1383 (5th Cir.1988). The court is not, however, allowed to reweigh the evidence, retry the facts *de novo,* or substitute its judgment for that of the Commissioner. See *Carrier v. Sullivan,* 944 F.2d 243, 247 (5th Cir.1991). This is so, even if the court determines the evidence could allow for a different finding. *Strickland v. Harris,* 615 F.2d 1103, 1106 (5th Cir.1980).

**Determining the Existence of a Mental Impairment**

The procedure for evaluating a mental impairment(s) first requires the evaluator to record the signs, symptoms, findings, functional limitations, and effects of treatment to aid in determining whether a mental impairment exists. 20 C.F.R. § 404.1520a(b)(1). If an impairment is found to exist, the evaluator must indicate whether it is related to the ability to work. 20 C.F.R. § 404.1520a(b)(2). The procedure then requires the evaluator to rate the claimant's degree of functional loss resulting from the impairment(s). 20 C.F.R. § 404.1520a(b)(3). Following the rating of degree of functional loss, the evaluator must determine the severity of the impairment(s). 20 C.F.R. § 404.1520a(c). If the mental impairment is found to be severe, the evaluator must determine whether it meets or is equivalent to a listed mental disorder. 20 C.F.R.

§ 404.1520a(c)(2). If the impairment is severe but does not meet or equal a listed mental impairment, then the claimant's residual functional capacity must be assessed. 20 C.F.R. § 404.1520a(c)(3). A standard document outlining the steps of this procedure (i.e., PRTF) must be completed in each case at the initial, reconsideration, administrative law judge, and Appeals Council levels. 20 C.F.R. § 404.1520a(d). For all hearings involving mental disorders at the administrative law judge or Appeals Council levels, the standard document will be appended to the decision. 20 C.F.R. § 404.1520a(d)(2) (1997).

## II. DISCUSSION

### A. The ALJ's Decision

During the relevant period under consideration,[2] the ALJ determined that Spears had not engaged in substantial gainful activity. After reviewing the record, the ALJ concluded Dr. Pollock's examination and evaluation of Spears merited more weight and credibility than the staff reviewing physicians. (R. 38). He noted that the staff reviewing physicians had not examined Spears as did Dr. Pollock, whose report found no such moderate limitations. The ALJ also observed Spears at the hearing and averred that based on the record as a whole, she adequately maintained social functioning and her concentration, persistence and pace in completing tasks in a timely manner was adequate. (R. 38). The ALJ discredited Dr. Salvato's opinions reasoning that she was not a psychiatrist, there were no objective medical findings documented, and the diagnosis was based on Spears' own subjective symptoms. (R. 39).

Ultimately, the ALJ found that Spears suffered from a severe combination of medically determinable impairments including chronic fatigue syndrome, depression, and migraine headaches. (R. 36, 45). The ALJ attached the psychiatric review technique form to his decision, documenting that Spears was evaluated based on the criteria under section 12.04 of the listing of impairments.[3] (R. 48). Accordingly, under 12.04A, Spears' condition was shown to exhibit a disturbance of mood accompanied by depression not affecting the ability to pay attention and concentrate. (R. 48). Under 12.04B, the ALJ determined that her daily activities were slightly limited, difficulty in maintaining social functioning was slight to moderate, deficiencies of concentration, persistence or pace was seldom, and there were never episodes of deterioration in work or work-like settings. (R. 49). It was further determined that her impairments, singly or in combination, did not meet or equal the criteria of an impairment of listing level severity. (R. 36). The vocational expert opined that Spears was able to return to her past light work and that she possessed transferable skills that would enable her to perform sedentary semi-skilled jobs, such as information clerk, receptionist, and procurement clerk. (R. 42) The ALJ concluded, due to the restrictions imposed by Spears' combination of impairments, she was relegated to a light level of exertion and restricted from work involving heights. (R. 36, 45).

### B. The ALJ's Alleged Failure To Apply The Correct Legal Standards

Spears contends the ALJ failed to include the limitations related to her severe

---

**2.** The relevant period under consideration is the period between October 3, 1995 and October 5, 1998. October 3, 1995, is the date of Spears' onset. October 5, 1998, is the date of the hearing before the ALJ.

**3.** The required level of severity for affective disorders under section 12.04 is met when the requirements in both category A and category B are satisfied. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04.

depression in completing the Psychiatric Review Technique Form ("PRTF"), in assessing her residual functional capacity, and in posing the hypothetical question to the vocational expert. In support of her contention, Spears cites *Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir.1996). In *Carter*, the court remanded the case to allow for further development of the record with regards to the claimant's mental impairments. The court further held that if the ALJ reached his decision at the fifth step in the sequential process, then he should consider the claimant's mental impairments, if any, in completing the PRTF, assessing the residual functional capacity, and in reframing the hypothetical question posed to the vocational expert. *Id.*

### 1. Limitations Related To Claimant's Severe Depression

We first address the contention that the manner in which the PRTF was completed reflected a nonsevere impairment, indicating that the ALJ did not consider Spears' severe depression when completing the form. The ALJ concluded that Spears suffered from a severe combination of medically determinable impairments including chronic fatigue syndrome, depression, and migraine headaches. The ALJ documented his findings in the PRTF. (R. 38, 49). In completing the form, the ALJ noted that Spears suffered from a severe impairment not expected to last twelve (12) months. Further, the ALJ evaluated Spears based on the criteria of section 12.04 of the listing of impairments. Spears' condition was found to exhibit a disturbance of mood accompanied by depression. In rating the severity of her impairment, however, the ALJ determined that her depression did not have any debilitating effect. The ALJ completed the PRTF as to reflect slight restrictions of daily living activities and slight-to-moderate difficulties in maintaining social functioning and the ALJ further documented

that Spears seldom had deficiencies in concentration, persistence or pace and that she never experienced episodes of deterioration in work or work-like settings. (R. 49).

■ The procedure for evaluating a mental impairment(s) is set forth in 20 C.F.R. § 404.1520a. The third step in the process requires the evaluator to rate the claimant's degree of functional loss resulting from the severe impairment. 20 C.F.R. § 404.1520a(b)(3). If the impairment is rated as severe but does not meet the criteria of a listed impairment, then the residual functional capacity must be assessed. 20 C.F.R. § 404.1520a(c)(3). Because the ALJ found Spears combination of impairments to be severe and further assessed her residual functional capacity, he should have considered the limitations related to her severe depression in completing the PRTF, assessing her RFC, and in posing the hypothetical question to the VE. See *Carter v. Chater*, 73 F.3d at 1022.

A RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work related activities. *Myers v. Apfel*, 238 F.3d 617, 620 (2001). The purpose of assessing the claimant's RFC is to determine the work that can be done despite present limitations. *Id.*; see also 20 C.F.R. § 404.1545(a). The ALJ, however, did not include any limitations—basically contradicting the fact that he found her impairments to be severe. The SSA regulations provide that [a]n impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521. The Court, therefore, concludes that the ALJ did not apply the correct legal standard after making a determination of a severe combination of impairments. Failure to address Spears lim-

itations related to her severe impairment is remandable error. See *Myers*, 238 F.3d at 620–21.

### 2. Limitations Related To Claimant's Chronic Fatigue Syndrome

Spears maintains that the ALJ erred by failing to include limitations related to her chronic fatigue syndrome in his RFC assessment and the hypothetical question posed to the vocational expert. Spears further maintains the ALJ must consider all of the pertinent evidence when deciding whether the claimant can perform a certain category of work.

The SSA regulations indicate that [t]he determination of a claimant's mental RFC is crucial to the evaluation of his capacity to engage in substantial gainful activity when the criteria of a listed mental disorder are not met or equaled but the impairment is nevertheless severe. *Hargis v. Sullivan*, 945 F.2d 1482, 1491 (10th Cir. 1991) (citing 20 C.F.R. pt. 404, Subpt. P, App. 1, § 12.00(A)). As previously mentioned, the ALJ determined that Spears' combination of impairments did not satisfy the requirements of a listed impairment but were in fact severe. (R. 36, 45, 47). The ALJ was, therefore, required to consider all of her impairments when assessing her RFC. *See* 20 C.F.R. § 404.1545(a). A limited ability to carry out certain mental activities, such as limitations on understanding, remembering and carrying out instructions, and responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce the claimant's ability to do past work and other work. *Id.* at § 404.1545(c).

■ The ALJ specifically addressed Spears mental impairment in terms of her medical signs, symptoms, and laboratory findings as documented by the PRTF. Based on Dr. Pollock's psychiatric evaluation of Spears in 1997, which the ALJ accorded substantial weight, he concluded that Spears' mental RFC was not significantly limited. (R. 38). The ALJ rejected the staff reviewing physician's mental RFC assessment finding it contrary to Dr. Pollock's evaluation. (R. 38) The Court finds, however, that Dr. Pollock's evaluation of Spears did not particularly address Spears' mental RFC as it related to her ability to engage in substantial gainful activity. (R. 176–180) Dr. Pollock's evaluation merely addressed Spear's mental impairment in relation to signs, symptoms and laboratory findings.

The Commissioner contends that the record contained substantial evidence that Spears did not have significant functional limitations and, therefore, the ALJ did not err in declining to include the finding in the PRTF, the RFC assessment, or the hypothetical question posed to the VE. The Court does not agree with this contention. As previously mentioned, the ALJ determined that Spears suffered from a severe combination medically determinable illnesses. In conducting the RFC assessment and posing the hypothetical question to the VE, the ALJ should have reasonably included all related limitations. The Court recognizes that the ALJ included Spears' CFS in the hypothetical questioned posed to the VE, however, he did not include any limitations resulting from this, or any other impairment. Without including the limitations the Court finds that the hypothetical question posed was improper.

In reviewing the record, we find that the ALJ assessed Spears' physical RFC but failed to assess her mental RFC. Because this assessment is key in determining whether claimant can perform her past relevant work or other work, this assessment must be conducted on remand. In addition, the hypothetical question posed to the vocational expert must reasonably incorporate all limitations recognized by

the ALJ. See *Boyd v. Apfel,* 239 F.3d 698, 707 (5th Cir.2001) (citing *Bowling v. Shalala,* 36 F.3d 431, 436 (5th Cir.1994)). The ALJ's failure to properly include mental impairments in the hypothetical questions posed to the vocational expert render[s] those questions defective. See *O'Leary v. Schweiker,* 710 F.2d 1334, 1343 (8th Cir. 1983).

## C. The ALJ's Alleged Errors Affecting The Substantial Evidence Standard

### 1. *According Proper Weight To The Medical Evidence*

Spears contends that the ALJ did not give proper weight to Dr. Salvato's opinion. Dr. Salvato assessed Spears' physical RFC four days prior to the administrative hearing and the assessment indicated limitations for significantly less than the full range of sedentary work. (R. 286–87). Spears maintains that Dr. Salvato's findings and diagnoses are supported by the reports of other examining physicians, her own treating notes, blood testing, and other currently accepted tests for diagnosing chronic fatigue syndrome.

 The treating physician's opinion will be given controlling weight when it is supported by medically acceptable evidence and is not inconsistent with the other substantial evidence contained in the record. *See* 20 C.F.R. § 404.1527(d)(2). When a treating physician's opinion is not given controlling weight, however, the ALJ must provide good reason in his decision for the weight given to the treating source's opinion. *Id.*

 The ALJ indicated that he did not accord greater weight to Dr. Salvato's findings because she was not a psychiatrist and because her findings of CFS and depression were based on Spears' subjective

symptoms only. (R. 39). The record, however, demonstrates that Dr. Salvato based her findings on more than Spears' subjective symptoms and self-assessment. Spears underwent laboratory testing which revealed traces of the Epstein Barr ("EB") virus.[4] (R. 193–94). In treating Spears, Dr. Salvato also referenced the *Annals of Internal Medicine* in determining whether Spears' condition met the definition of CFS and also the former *Holmes* definition. (R. 233–34). Additionally, the reports of all evaluating and examining physicians subsequent to this diagnosis also found Spears to suffer from CFS. (R. 180, 246–248, 252, 254–56). The ALJ, therefore, did not accord proper weight to the medical evidence when discounting Dr. Salvato's opinion purportedly because it was based on subjective symptoms only. The Court finds that Dr. Salvato's opinion was based on signs, symptoms, and laboratory findings.

 Spears further contends the ALJ should have given controlling weight to Dr. Salvato's opinion because it was supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. The Court disagrees. There is conflicting evidence in the record regarding Spears' functional limitations and her residual functional capacity to do basic work activities.

### 2. *Consulting A Medical Expert To Determine Whether Claimant's Impairment(s) Met or Equaled Section 12.04 Of The Listing Of Impairments*

 In addressing Spears' contention that the ALJ failed to consult a medical advisor (also termed a medical expert) to determine whether her impairments met

---

4. The Epstein Barra virus that causes infectious mononucleosis and is associated with Burkitt's lymphoma (lesion in the jaw or as abdominal mass) and nasopharyngeal carcinoma (malignant tumor arising in the lining in the space behind the nose).

or equaled section 12.04, the Court finds that the ALJ may request a medical advisor to testify when he or she feels it is necessary. See *Haywood v. Sullivan*, 888 F.2d 1463, 1467 (5th Cir.1989). Further, the SSA regulations provide that in evaluating the severity of a claimant's mental impairments, the ALJ may complete the document with or without the assistance of a medical advisor.[5] *See* 20 C.F.R. § 404.1520a(d)(i)-(ii). A medical advisor is a board-certified specialist primarily used in complex cases for explanation of medical problems in terms understandable to the layman-examiner. *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). According to 20 C.F.R. § 404.1520a(d)(i)-(ii), it is within the discretion of the ALJ to call a medical advisor. Thus, Spears' contention that the ALJ erred in failing to consult a medical advisor is without merit.

### 3. *New Evidence Submitted After The Hearing*

Spears maintains that new evidence presented subsequent to the ALJ's decision would have materially altered the outcome had it been presented to the ALJ. The additional evidence consisted of a residual functional capacity assessment performed by Dr. Salvato and a work evaluation report conducted by a vocational evaluator. The Appeals Council reviewed this evidence and determined that it did not provide a basis for changing the ALJ's decision. Spears has not alleged that she was unable to produce this evidence at or prior to the administrative hearing. Additionally, because the RFC assessment is cumulative evidence and the limitations imposed by the vocational evaluator's assessment are not supported by objective medical evidence, the Court finds that neither of these reports would have materially altered the ALJ's decision. See *Shave v. Apfel*, 238 F.3d 592, 597 (5th Cir.2001).

### CONCLUSION

Based on the foregoing reasons, the Court concludes that the ALJ failed to include any limitations related to claimant's severe depression in completing the Psychiatric Review Technique form, assessing the claimant's residual functional capacity, and posing the hypothetical to the vocational expert; the ALJ failed to include any limitations from claimant's chronic fatigue syndrome in the residual functional capacity assessment; and the ALJ erred in according proper weight to the medical evidence. It is, therefore,

**ORDERED** that Spear's Motion for Summary Judgment (Entry # 13) is **GRANTED**. Further, it is

**ORDERED** that the Commissioner's Motion for Summary Judgment (Entry # 15) is **DENIED**.

Finally, it is

**ORDERED** that Final Judgment be entered in favor of Spears and that this case be remanded to the Commissioner so that the ALJ can apply the correct legal standards.

The Clerk shall file this Memorandum and Order and provide the parties with a true copy.

---

5. Under the regulations, this document is used in assisting the adjudicator in evaluation of mental impairments. 20 C.F.R. § 404.1520a.