Doris MITTAG, Plaintiff,

v.

Jo Anne B. BARNHART, Commission-
er of the Social Security Adminis-
tration, Defendant.

Civ.A. No. H–02–3943.

United States District Court,
S.D. Texas,
Houston Division.

Sept. 29, 2004.

Victor N. Makris, Attorney at Law, Bellaire, TX, for Plaintiff.

Kerry J. Simpson, U.S. Atty's Office, Special Assistant U.S. Attorney, Kim Elizabeth Garcia, Social Security Administration, Office of the General Counsel, Dallas, TX, for Defendant.

## AMENDED MEMORANDUM AND ORDER

BOTLEY, United States Magistrate Judge.

Pending before the Court are Plaintiff Doris Mittag's ("Mittag") and Defendant Jo Anne B. Barnhart's ("Commissioner") cross-motions for summary judgment. Mittag appeals the determination of an Administrative Law Judge ("ALJ") that she is not entitled to receive widow's insurance benefits or disability insurance benefits under Title II of the Social Security Act. *See* 42 U.S.C. §§ 402(e), 423. Having reviewed the pending motions, the submissions of the parties, the pleadings, the administrative record, and the applicable law, this Court is of the opinion that Mittag's Motion for Summary Judgment (Docket Entry No. 19) should be granted, the Commissioner's Motion for Summary Judgment (Docket Entry No. 21) should be denied, and the ALJ's decision denying Mittag benefits be remanded pursuant to sentence four to the Social Security Administration for further proceedings.

## I. *Background*

On October 24, 1994, Mittag filed an application for disability and widow's insurance benefits with the Social Security Administration ("SSA"), claiming that she has been disabled and unable to work since July 14, 1994. (R. 15, 78–84). Mittag suffers from abdominal seizures, hypertension, anemia, rheumatoid arthritis (by history), and cardiac palpitations (by history). (R. 16, 20).

After being denied benefits initially and on reconsideration, Mittag requested an administrative hearing before an ALJ to review the decision. A hearing was held on January 30, 1997, in Bellaire, Texas, at which time ALJ Paul W. Schwarz ("ALJ Schwarz") heard testimony from Mittag, Craddock P. Duren, M.D. ("Dr. Duren"), a medical expert who specialized in internal medicine and cardiovascular surgery, Milton Altschuher, M.D., a board-certified psychiatrist, and Karen Nielsen, a vocational expert. (R. 341). In a decision dated May 31, 1997, the ALJ denied Mittag's application for benefits. (R. 341–353). Mittag appealed the decision. On February 1, 1999, the Appeals Council granted Mittag's request for review, vacated the hearing decision, and remanded the case to ALJ Schwarz to explain the consideration given to treating source opinions and the weight given to the opinions of state agency medical and psychological consultants. (R. 362). Additionally, the Appeals Council noted that the hearing tape could not be located; therefore, the record was incomplete. (R. 362).

A supplemental hearing was scheduled on June 28, 1999; however, the case was postponed due to the failure of Mittag's counsel to appear at the hearing. (R. 32–37). The hearing was rescheduled and held on April 17, 2000, in Bellaire, Texas, at which time ALJ Schwarz heard testimony from Mittag, Clarence Dube, M.D. ("Dr. Dube"), Mittag's family physician, Dr. Duren, Bernard Gerber, M.D., a board-certified psychiatrist, and Charles Poor ("Poor"), a vocational expert. (R. 38–71). In a decision dated June 6, 2000, the ALJ denied Mittag's application for benefits, concluding that she was not disabled within the meaning of the Social Security Act ("the Act"). (R. 15–29). The ALJ found that none of Mittag's impairments, either singly or in combination, met or medically equaled the criteria of the

List of Impairments; that Mittag's testimony of pain, other subjective complaints, and functional limitations was neither fully credible or supported by the overall record; that Mittag retained the residual functional capacity to perform sedentary work with certain limitations; and, that Mittag was capable of performing her past relevant work as a general office clerk. (R. 20–21). Mittag appealed the decision and, on September 10, 2002, the Appeals Council determined there was no basis for granting her request for review. (R. 5–7). Mittag filed the instant action on October 16, 2002, contesting the Commissioner's denial of her claim for benefits. *See* Docket Entry No. 1.

## II. *Analysis*

### A. *Statutory Bases for Benefits*

The SSA provides for payment of widow's insurance benefits to disabled widows and widowers between the ages of fifty and sixty, whose spouses die fully insured. *See* 42 U.S.C. § 402(e). Prior to 1991, a widow had to establish that the physical or mental impairment or impairments possessed were of a level of severity deemed sufficient to preclude engagement in *any gainful activity. See* 42 U.S.C. § 423(d)(2)(B) (1989) (emphasis added). This standard was more stringent than that applied to the disabled wage earner, who is precluded from engaging in *substantial gainful employment. See* 42 U.S.C. § 423(d)(2)(A) (1989) (emphasis added); *see also Dorton v. Heckler,* 789 F.2d 363, 365 (6th Cir.1986).

"In 1990, Congress amended the Social Security Act to provide that as of January 1, 1991, the definition of disability for the purpose of determining spouses' (*i.e.,* widows', widowers', and surviving divorced spouses') benefits would conform with that applicable to wage-earners' disability claims under Title II, Pub.L. 101–508 § 5103." *Wachter v. Shalala,* 856 F.Supp.

140, 144 (W.D.N.Y.1994). Consequently, in determining whether or not a widow is disabled for the purposes of the SSA, the Commissioner now considers not only mental and physical impairments and residual functional capacity, as required under the pre–1991 language of the Act, but also age, education, and work experience, and work available in the national economy. *See id.; see also* 42 U.S.C. § 423(d)(2)(B). Disability determinations follow the sequential evaluation process outlined in the Social Security Administration regulations at 20 C.F.R. § 404.1520. *See id.*

### B. *Standard of Review*

#### 1. *Summary Judgment*

The court may grant summary judgment under FED. R. CIV. P. 56(c) when the moving party is entitled to judgment as a matter of law because there is no genuine issue as to any material fact. The burden of proof, however, rests with the movant to show that there is no evidence to support the nonmoving party's case. If a reasonable jury could return a verdict for the nonmoving party, then a motion for summary judgment cannot be granted because there exists a genuine issue of fact. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

An issue of fact is "material" only if its resolution could affect the outcome of the case. *See Duplantis v. Shell Offshore, Inc.,* 948 F.2d 187, 189 (5th Cir.1991). When deciding whether to grant a motion for summary judgment, the court shall draw all justifiable inferences in favor of the nonmoving party, and deny the motion if there is some evidence to support the nonmoving party's position. *See McAllister v. Resolution Trust Corp.,* 201 F.3d 570, 574 (5th Cir.2000). If there are no issues of material fact, the court shall re-

view any questions of law *de novo*. *See Merritt–Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir.1999). Once the movant properly supports the motion, the burden shifts to the nonmoving party, who must present specific and supported material facts, of significant probative value, to preclude summary judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *International Ass'n of Machinists & Aerospace Workers, AFL–CIO v. Compania Mexicana de Aviacion, S.A. de C.V.*, 199 F.3d 796, 798 (5th Cir.2000).

### 2. *Administrative Determination*

■ Judicial review of the Commissioner's denial of disability benefits is limited to whether the final decision is supported by substantial evidence on the record as a whole and whether the proper legal standards were applied to evaluate the evidence. *See Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir.2002). "Substantial evidence" means that the evidence must be enough to allow a reasonable mind to support the Commissioner's decision; it must be more than a mere scintilla and less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Masterson*, 309 F.3d at 272; *Brown*, 192 F.3d at 496.

■ When applying the substantial evidence standard on review, the court "scrutinize[s] the record to determine whether such evidence is present." *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir.2001) (citations omitted). If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. *See Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir.2002). Alternatively, a finding of no substantial evidence is appropriate if no credible evidentiary choices or medical findings support the decision. *See Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir.2001). The court may not, however, reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *See Masterson*, 309 F.3d at 272. In short, "[c]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Masterson*, 309 F.3d at 272.

### C. *ALJ's Determination*

An ALJ must engage in a five-step inquiry to determine whether the claimant is capable of performing "substantial gainful activity," or is, in fact, disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings. *See* 20 C.F.R. § 404.1520(b).

2. An individual who does not have a "severe impairment" will not be found to be disabled. *See* 20 C.F.R. § 404.1520(c).

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors. *See* 20 C.F.R. § 404.1520(d).

4. If an individual is capable of performing the work [she] has done in the past, a finding of "not disabled" must be made. *See* 20 C.F.R. § 404.1520(e).

5. If an individual's impairment precludes performance of [her] past work, then other factors, including age, education, past work experience, and residual functional capacity must be considered to determine if any work can be performed. *See* 20 C.F.R. § 404.1520(f).

*Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir.2000); *accord Boyd*, 239 F.3d at 705. The claimant has the burden to prove disability under the first four steps. *See Myers*, 238 F.3d at 619. If the claimant

successfully carries this burden, the burden shifts to the Commissioner in step five to show that other substantial gainful employment is available in the national economy, which the claimant is capable of performing. *See Masterson,* 309 F.3d at 272; *Greenspan v. Shalala,* 38 F.3d 232, 236 (5th Cir.1994), *cert. denied,* 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995). If the Commissioner is able to verify that other work exists in significant numbers in the national economy that the claimant can perform in spite of his or her existing impairments, the burden shifts back to the claimant to prove that he or she cannot, in fact, perform the alternate work suggested. *See Boyd,* 239 F.3d at 705. A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis. *See id.*

■ The mere presence of an impairment does not necessarily establish a disability. *See Anthony v. Sullivan,* 954 F.2d 289, 293 (5th Cir.1992). An individual claiming disability benefits under the Act has the burden to prove that she suffers from a disability as defined by the Act. *See Newton,* 209 F.3d at 452; *Selders v. Sullivan,* 914 F.2d 614, 618 (5th Cir.1990); *Johnson v. Bowen,* 864 F.2d 340, 343 (5th Cir.1988); *Cook v. Heckler,* 750 F.2d 391, 393 (5th Cir.1985). A claimant is deemed disabled under the Act only if she demonstrates an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Shave v. Apfel,* 238 F.3d 592, 594 (5th Cir.2001); *accord Newton,* 209 F.3d at 452; *Crowley v. Apfel,* 197 F.3d 194, 197–98 (5th Cir.1999); *Selders,* 914 F.2d at 618; *see also* 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit." *Newton,* 209 F.3d at 452–53; *see also* 20 C.F.R. §§ 404.1572(a),(b), 416.972.

"A medically determinable 'physical or mental impairment' is 'an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.' " *Hames v. Heckler,* 707 F.2d 162, 165 (5th Cir.1983) (quoting 42 U.S.C. § 423(d)(3)). "[A]n individual is 'under a disability, only if [her] impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .' " *Greenspan,* 38 F.3d at 236 (quoting 42 U.S.C. § 423(d)(2)(A)). This is true regardless of whether such work exists in the immediate area in which the claimant resides, whether a specific job vacancy exists, or whether the claimant would be hired if she applied. *See Oldham v. Schweiker,* 660 F.2d 1078, 1083 (5th Cir.1981); *see also* 42 U.S.C. § 423(d)(2)(A).

In the case at bar, when addressing the first four steps, the ALJ determined:

1. The claimant is the widow of the wage earner, Franklin Mittag, who died on September 4, 1989. She is over 50 years of age and unmarried. The claimant would not be entitled to [T]itle II benefits before the date of the wage earner's death.

2. The claimant's insured status for entitlement to [T]itle II benefits expired on December 31, 1999.

3. No evidence of substantial gainful activity exists during the relevant period under consideration.

4. The claimant has the following severe medically determinable impairments: abdominal seizures,

hypertension, anemia, rheumatoid arthritis (by history) and cardiac palpitations (by history).

5. None of the claimant's impairments, either singly or in combination, is attended by clinical or laboratory findings which meet or medically equal the criteria for any impairment set forth in Appendix 1, Subpart P, Regulation No. 4 ("Listing of Impairments") for presumptive disability, the listed severity criteria being absent.

6. The claimant's testimony of pain, other subjective complaints, and functional limitations is neither fully credible nor supported by the overall record.

7. The claimant retains the residual functional capacity to perform sedentary work compromised by the inability to work at significant unprotected heights, inability to work around potentially dangerous and unguarded moving machinery, inability to perform commercial driving, and necessity to have access to a lavatory on an as needed basis.

8. The claimant is capable of performing her past relevant work as a general office clerk.

9. The claimant has not been under a disability, as defined in the Act, at any time through the date of this decision.

(R. 20–21). Because the ALJ made a determination at step four, he did not proceed to step five.

 This court's inquiry is limited to a determination of whether there is substantial evidence in the record to support the ALJ's findings and whether the proper legal standards have been applied. *See Masterson,* 309 F.3d at 272; *Watson,* 288 F.3d at 215; *Myers,* 238 F.3d at 619; *Newton,* 209 F.3d at 452; *Greenspan,* 38 F.3d at 236; *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). To determine whether the decision to deny Mittag's claim for disability benefits is supported by substantial evidence, the court weighs the following four factors: (1) the objective medical facts; (2) the diagnoses and opinions from treating and examining physicians; (3) the plaintiff's subjective evidence of pain and disability, and any corroboration by family and neighbors; and (4) the plaintiff's age, educational background, and work history. *See Martinez v. Chater,* 64 F.3d 172, 174 (5th Cir.1995); *Wren v. Sullivan,* 925 F.2d 123, 126 (5th Cir.1991) (citing *DePaepe v. Richardson,* 464 F.2d 92, 94 (5th Cir. 1972)). Any conflicts in the evidence are to be resolved by the ALJ and not the court. *See Newton,* 209 F.3d at 452; *Brown,* 192 F.3d at 496; *Martinez,* 64 F.3d at 174; *Selders,* 914 F.2d at 617.

### D. *Issues Presented*

Mittag contends that the decision of the ALJ and of the Appeals Council are in error, claiming that the decisions were not supported by substantial evidence. Specifically, Mittag claims that the ALJ failed to incorporate consideration of all of her medically determinable impairments in assessing her residual functional capacity. Specifically, Mittag argues that the ALJ failed to consider her mental impairments. Consequently, Mittag contends that the ALJ's hypothetical question to the VE and the VE's response were flawed because neither reflected all of her medically determinable impairments. Mittag also asserts that the ALJ failed to conduct a meaningful evaluation of her credibility in assessing her subjective symptoms. Next, Mittag claims that the ALJ failed to complete the analysis set forth in 20 C.F.R. § 404.1527(d)(2) before rejecting her treating physician's views. Finally, Mittag maintains that the ALJ failed to recognize and resolve the conflict between the Dictionary of Occupational Titles ("DOT") and

the testimony of the VE. *See* Docket Entry No. 20. The Commissioner disagrees with Mittag's contentions, claiming that the ALJ's decision is supported by substantial evidence. *See* Docket Entry No. 22.

### E. *Review of the ALJ's Decision*

### 1. *Conflict between the Dictionary of Occupation Titles and Testimony of Vocational Expert*

■ At step four of the sequential evaluation process, in determining that Mittag could return to her past relevant work as a general office clerk, the ALJ relied upon the testimony of a vocational expert ("VE"). (R. 20–21, 67–70). In his decision, the ALJ concluded:

> The vocational expert testified that the claimant's past work as a general office clerk is *sedentary* and *skilled*. Given the claimant's functional capacity, the vocational expert credibly testified that the claimant is capable of performing her past work as a general office clerk. The vocation expert further testified that if an individual needs to lie down 3 times per day for 20– to 45–minute intervals, that individual would not be capable of performing substantial gainful activity.

(R. 20) (emphasis added).

As an initial matter, the ALJ mischaracterized the VE's testimony. Contrary to the ALJ's decision, the VE testified that the plaintiff's past employment as a general office clerk required sedentary exertion and could best be characterized as *semi-skilled.* (R. 67).

> Q: In an earlier hearing in this case, the past relevant work of the claimant was identified as a general office clerk, and that was characterized as sedentary

and skilled. Do you agree with that characterization?

> A. I would probably modify it to characterize it, as *sedentary and semi-skilled.*

(R. 67) (emphasis added). The ALJ overlooks this testimony in his decision.

Additionally, Mittag correctly points out that the job of general office clerk, as described in the DOT, in the primary or secondary designation ("Clerk, General" and "Administrative Clerk or Clerk, General Office"), requires *light* physical exertion. *See Dictionary of Occupational Titles,* §§ 209.562–010; 219.362–010 (4th ed.1991). Thus, the job of general office clerk is beyond the scope of Mittag's limitation to sedentary work. Despite such a patent inconsistency, the ALJ neither recognizes or seeks to reconcile the conflict between the VE's testimony and the DOT.[1]

When the conflict between the VE's testimony and the DOT is implied or indirect, the Fifth Circuit has held that an ALJ may rely on a VE's testimony "provided that the record reflects an adequate basis for doing so." *See Carey v. Apfel,* 230 F.3d 131, 146 (5th Cir.2000). Thus, if substantial evidence supports the VE's opinion, the court may affirm the Commissioner, irrespective of the claimed conflict between the DOT descriptions and the VE's specific testimony. The Fifth Circuit has not yet addressed squarely the related but separate question of whether the Commissioner's decision denying benefits lacks substantial evidentiary support if based on a VE's testimony that directly and obviously conflicts with the DOT's description of non-exertional and/or skill levels required for particular jobs. Moreover, in *Carey,* the Fifth Circuit carefully

---

1. Although Mittag argues that the ALJ violated SSR 00–4p by failing to recognize and resolve the conflict between the DOT and the testimony of the VE, the Commissioner correctly point out that SSR 00–4p was not in effect at the time of the ALJ's decision on June 6, 2000. *See* SSR 00–4p, 2000 WL 1898704, at *2 (S.S.A. Dec. 4, 2000).

distinguished the indirect conflict involved there from direct and obvious conflicts. The Fifth Circuit identified the latter as existing "when the vocational expert's characterization of the exertional or skill level required for a particular job is facially different from the exertional or skill level provided for that job in the DOT" and, to a less obvious extent, "when the vocational expert's testimony creates a conflict or discrepancy between the ALJ's determination of the claimant's residual functional capacity and the DOT job descriptions." *Id.* at 146. Because the Fifth Circuit so carefully distanced the rule it established in *Carey* from situations involving direct conflicts, an inference can be drawn that a more stringent, less deferential rule might apply when the VE's testimony directly and obviously conflicts with DOT job descriptions.

Here, the VE's testimony that an individual with Mittag's functional capacity could perform the job of general office clerk is in direct conflict with the DOT job descriptions of "Clerk, General" and "Administrative Clerk or Clerk, General Office," the only occupations that carry the aforementioned title. Neither the VE nor the ALJ recognized or discussed the conflict between the VE's testimony and the DOT. Likewise, neither the VE nor the ALJ articulated plausible reasons for finding the VE's testimony more credible under the circumstances. Independent review of the administrative record discloses no substantial evidence that Mittag can perform her past relevant job as a general office clerk.

To the extent the Commissioner contends that the ALJ had no affirmative duty to inquire about conflicts between the DOT and VE testimony because the DOT is not a substitute for VE testimony and/or that a VE can better determine the impact of specific individual limitations on an occupational base, these general propositions

of law do not apply in this case because the VE, Poor, lacked sufficient information to make an informed conclusion regarding Mittag's past job duties as a general office clerk. Poor's assessment as to the physical exertion level of Mittag's past relevant work as a general office clerk was made only after the ALJ, in a conclusory statement, advised Poor that Mittag's job duties had been previously characterized as requiring sedentary physical exertion. (R. 67). Karen Nielsen, not Poor, was the VE at the previous administrative hearing and no transcript exists to review from the first hearing because the tapes were lost. (R. 341, 362). Additionally, Poor did not arrive to the administrative hearing timely and Poor admitted to the ALJ that he had not reviewed any material in Mittag's case. (R. 40, 67–68). In this regard, Poor testified:

Q: Okay. And in your independent review, of the vocational history in this case, were you able to discover any other relevant work, sir?

A: *Sir, I have not reviewed any material on this case. I did not receive a notice on this case.*

Q: Once again.

A: I arrived for my 9:00 a.m. case, and they told me, Judge Schwarz wanted to see me, so in I came.

Q: Okay. Are you—you're on my other cases though, right?

A: Yes, well 9:00, 10:00, 1:00 and 2:00.

Q: *All right. But they didn't bother to tell you about this one?*

A: *No sir.*

Q: I hope you will lodge a complaint, with your Congressman?

A: I don't think so. I'll do whatever is appropriate.

Q: Nothing else seems to make any impression, it's like.

A: I'll do whatever is appropriate. (R. 67–68) (emphasis added). The VE's acquiescence to the ALJ's characterization of the physical exertion level of Mittag's past position as sedentary was in error, as the VE had no knowledge of and did not analyze Mittag's past job duties as a general office clerk.

Thus, there is insufficient evidence demonstrating that, absent the general office clerk job, work that Mittag could perform exists in significant numbers in the national economy. Consequently, the ALJ's decision is not supported by substantial evidence that Mittag is capable of performing her past relevant work as a general office clerk. Therefore, remand is appropriate.

### 2. Additional Matters

On remand, to the extent the ALJ rejects the opinions of Mittag's treating physicians regarding Mittag's limitations, the ALJ shall complete the analysis required by 20 C.F.R. 404.1527(d)(2). Further, in determining Mittag's residual functional capacity, the ALJ shall take into consideration Mittag's alleged mental impairments, if any, and include such mental impairments in any hypothetical posed to the VE.

### III. Conclusion

It is, therefore

**ORDERED** that Mittag's Motion for Summary Judgment (Docket Entry No. 19) be **GRANTED**. It is further

**ORDERED** that the Commissioner's Motion for Summary Judgment (Docket Entry No. 21) be **DENIED**. It is finally

**ORDERED** that the case is **RE-VERSED** and **REMANDED**, pursuant to "sentence four" of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to the Commissioner for a new hearing.

### AMENDED FINAL JUDGMENT

In accordance with the Memorandum and Order issued this day, it is hereby

**ORDERED** that Mittag's Motion for Summary Judgment (Docket Entry No. 19) be **GRANTED**. It is further

**ORDERED** that the Commissioner's Motion for Summary Judgment (Docket Entry No. 21) be **DENIED**. It is finally

**ORDERED** that the case is **RE-VERSED** and **REMANDED**, pursuant to "sentence four" of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to the Commissioner for a new hearing.

This is a **FINAL JUDGMENT**.