United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 1, 2003**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 02-21259

_____

ADMINISTAFF COMPANIES, INC.,

Plaintiff - Counter Defendant - Appellee,

versus

NEW YORK JOINT BOARD, SHIRT & LEISUREWEAR DIVISION, UNION OF
NEEDLETRADES, INDUSTRIAL AND TEXTILE EMPLOYEES "UNITE", AFL-CIO,
CLC, etc; ET. AL.,

Defendants,

NEW YORK JOINT BOARD, SHIRT & LEISUREWEAR DIVISION, UNION OF
NEEDLETRADES, INDUSTRIAL AND TEXTILE EMPLOYEES "UNITE", AFL-CIO,
CLC, as representative of its members who were employees of
TheCustomShop.com Inc and all other similarly-situated former
employees of TheCustomShop.com Inc, whether or not members of the
Union,

Defendant - Counter Claimant - Appellant,

versus

RODNEY TOW, in his capacity as the Chapter 7 Trustee for the
Chapter 7 Bankruptcy Estate of TheCustomShop.com Inc,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas

_____

Before JONES and CLEMENT, Circuit Judges, and FELDMAN,* District
Judge.

_____

*District Judge of the Eastern District of Louisiana, sitting by designation.

EDITH H. JONES, Circuit Judge:

The district court granted Administaff Companies, Inc. (Administaff) summary judgment, concluding that it was not liable for violations of the Worker Adjustment and Retraining Notification Act (WARN Act), 29 U.S.C. § 2101 et seq. We affirm.

## I. BACKGROUND

Administaff provides personnel management, payroll, and administrative services for other businesses, essentially operating as an off-site human resources department. TheCustomShop.com (TCS), the former owner of a men's clothing production plant in New Jersey, contracted for the services of Administaff. In late 2000, TCS began to encounter financial difficulties. When attempts to raise capital and to sell the business failed, TCS closed its New Jersey facility without providing the sixty days notice required by 29 U.S.C. § 2102(a). Administaff did not participate in TCS's decision to close its New Jersey plant and was not aware of the closing until after it occurred.

In April 2001, the Joint Board, the union representing the employees of the New Jersey facility, demanded that Administaff, as an employer under the WARN Act, compensate each member of the bargaining unit for sixty days of pay plus benefits because the employees did not receive proper WARN Act notice. In response to the Joint Board's request, Administaff commenced this declaratory judgment action. The district court granted

2

Administaff's motion for summary judgment, and we affirm.

## II. DISCUSSION

The grant of summary judgment is reviewed de novo and may be affirmed on any ground raised below and supported by the record. Yeager v. City of McGregor, 980 F.2d 337, 339 (5th Cir. 1993). We affirm the district court's grant of summary judgment on two grounds. First, based on the plain language of the statute, Administaff is not liable for failure to give WARN Act notice because it did not order the closing of the New Jersey facility. "In a statutory construction case, the beginning point must be the language of the statute, and when a statute speaks with clarity to an issue, judicial inquiry into the statute's meaning, in all but the most extraordinary circumstance, is finished." Perrone v. Gen. Motors Acceptance Corp., 232 F.3d 433, 435 (5th Cir. 2000) (quoting Estate of Cowart v. Nicklos Drilling, Co., 505 U.S. 469, 475, 112 S. Ct. 2589, 2594, 120 L. Ed. 2d 379 (1992)). The WARN Act provides that

> [a]ny employer who orders a plant closing or mass layoff in violation of section 3 of this Act [(the 60-day notice provision)] shall be liable to each aggrieved employee who suffers an employment loss as a result of such closing or layoff for [back pay and benefits].

29 U.S.C. § 2104(a)(1) (emphasis added).

Under a plain reading of 29 U.S.C. § 2104(a)(1), Administaff cannot be liable for the lack of WARN Act notice because it did not order the closing of TCS's New Jersey facility.

3

See Local 217, Hotel & Rest. Employees Union v. MHM, Inc., 976 F.2d 805, 811 (2d Cir. 1992) (Mahoney, J., concurring ) (". . . I would conclude that in view of [the hotel owner's] undisputed responsibility for the closing decision, [the owner], and not MHM, is the 'employer' that 'ordered' the Summit Hotel closing within the meaning of § 2104(a)(1), and is therefore the only party liable under that statute.").[1]  TCS ordered the closing of its New Jersey facility and informed Administaff of its decision after the fact.

Although the Joint Board argues that this construction of the statute ignores the broad remedial purposes of the WARN Act and the statute's legislative history, it does not point to any legislative history to support its position.  In any event, this Court only resorts to the rule of lenity and legislative history if the text of a statute is opaque or ambiguous.  Perrone, 232 F.3d at 440.  Here, the language of the statute is clear.  The statute imposes liability only on an employer who orders the closing of a plant.

---

[1]In MHM, laid-off hotel employees sought medical benefits under the WARN Act from MHM, a hotel management firm.  MHM argued that it was powerless to comply with the WARN Act's notice provisions because the owner of the hotel had sole control over the timing of and decision to end the hotel's operations.  The majority concluded that MHM was a WARN Act employer because it contracted to manage the hotel.  We distinguish the majority's holding for three reasons.  First, MHM ran every aspect of the hotel on a day-to-day basis in the normal commercial sense, while Administaff did not have the right to manage or make decisions regarding TCS's New Jersey facility; second, MHM carried out the closing of the hotel and ultimately laid off the employees, while Administaff had nothing to do with the closing; third, MHM was a party to the collective bargaining agreement, while Administaff was not.  We also note that the relevant portion of MHM is dicta; the court ultimately denied the appellants' request for a preliminary injunction because the WARN Act provides only a damages remedy.

We also affirm summary judgment for the reasons stated by the district court. The Joint Board argued that Administaff should be held liable for WARN act violations as a "joint employer" with TCS, but the district court determined that under the five-factor test set forth in 20 C.F.R. § 639.3(a)(2) (the DOL factors),[2] Administaff's relationship with TCS did not make it an employer for WARN Act purposes.

The WARN Act and DOL regulations define an employer as any business enterprise that employs 100 or more employees. 29 U.S.C. § 2101(a)(1); 20 C.F.R. § 639.3(a)(1). Employers who violate the WARN Act are liable for back pay and benefits. 29 U.S.C. § 2104(a)(1). Administaff did not employ those who worked at TCS's New Jersey facility in the normal business sense; although Administaff "co-employed" TCS employees so that they could receive group medical benefits and workmen's compensation through Administaff policies, TCS employees did not perform any work or

---

[2]The regulation states:

> Under existing legal rules, independent contractors and subsidiaries which are wholly or partially owned by a parent company are treated as separate employers or as a part of the parent or contracting company depending upon the degree of their independence from the parent. Some of the factors to be considered in making this determination are (i) common ownership, (ii) common directors and/or officers, (iii) de facto exercise of control, (iv) unity of personnel policies emanating from a common source, and (v) the dependency of operations.

20 C.F.R. § 639.3(a)(2).

services for Administaff.[3]   For Administaff to be liable as an employer under the WARN Act to those who lost their jobs at TCS's New Jersey plant, Administaff must therefore be considered a single business enterprise with TCS, responsible for TCS's WARN Act obligations.  Relying primarily on Pearson v. Component Technology Corp., 247 F.3d 471 (3d Cir. 2001), the district court noted that courts have applied the DOL factors to determine whether business entities that are not wholly or partly owned by a parent are subject to WARN Act liability as an employer; indeed, the DOL factors specifically address the independent contractor situation, which we have here.

The first two factors are not at issue in this case.  The third factor, de facto exercise of control, "allows the factfinder to consider whether the [business in question] has specifically directed the allegedly illegal employment practice that forms the basis for the litigation."  Pearson, 247 F.3d at 491.  It is undisputed that Administaff had no role in, or even advance knowledge of, TCS's decision to close its New Jersey plant.

With respect to the fourth factor, Administaff and TCS did not have a unity of personnel policies emanating from a common source; they had separate responsibilities regarding personnel issues.  Under the Client Service Agreement between Administaff and

---

[3]Administaff may satisfy the statutory definition of "employer" by employing more than 100 employees of its own, but Administaff's status as a WARN Act employer with respect to its own employees is not relevant to its relationship with TCS's employees.

6

TCS, Administaff was responsible for the payment of salaries and wages and the provision of employee benefits. It also reserved the right to hire and terminate employees, maintain employee records, and resolve disputes not subject to the collective bargaining agreement. The Client Service Agreement placed responsibility for the payment of commissions, bonuses, paid leaves of absence, severance payments, nonqualified deferred compensation, and equity based compensation on TCS. TCS alone was responsible for the operation of its business and the decision to close its New Jersey plant.

Regarding the fifth factor, dependency of operations, "courts generally consider the existence of arrangements such as the sharing of administrative or purchasing services, interchanges of employees or equipment, and commingled finances." Id. at 500 (internal citations omitted). While Administaff provided administrative services to TCS, the companies did not share administrative services; there was no interchange of equipment or commingled finances. Administaff "co-employed" TCS's employees so that they could receive group medical benefits and workmen's compensation through Administaff policies, but TCS's employees did not perform any work or services for Administaff.

Like the district court, we reject the Joint Board's contention that Administaff should be held liable under the "joint employer test" used in National Labor Relations Act (NLRA) cases. Although courts have, in certain circumstances, drawn from NLRA

7

case law in interpreting the WARN Act, such an approach would not be appropriate here. As the Third Circuit explained, "the DOL factors are the best method for determining WARN Act liability because they were created with WARN Act policies in mind . . . ." Pearson, 247 F.3d at 490.[4]

Finally, that TCS agreed to indemnify Administaff in the event of a WARN Act violation does not alter our analysis. Administaff most likely bargained for indemnification to protect itself in the event it was held liable for its client's WARN Act violations. But the indemnification provision in no way suggests Administaff's liability.

For the foregoing reasons, we affirm the district court judgment.

**AFFIRMED.**

---

[4]The Joint Board points out that in response to a commenter's suggestion that "the regulation also should recognize the doctrine of joint employer status, as that doctrine has been developed under the NLRA," the Department of Labor explained that the "intent of the regulatory provision relating to independent contractors and subsidiaries is not to create a special definition of these terms for WARN purposes; the definition is intended only to summarize existing law that has developed under State Corporations laws and such statutes as the NLRA . . . . To the extent that existing law recognizes the joint employer doctrine . . . nothing in the regulation prevents application of that law." 54 Fed. Reg. 16042, 16045 (Apr. 20, 1989). To the extent that the regulations incorporate the joint employer test, it is inconsistent for the Joint Board to argue that the joint employer test, rather than the DOL factors, should apply.