IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 2, 2008

Charles R. Fulbruge III
Clerk

No. 06-21003

BILLY RAY TRATREE

Plaintiff-Appellant

v.

BP NORTH AMERICAN PIPELINES, INC.; KELLY GLEASON

Defendants-Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:03-CV-954

Before DAVIS and SOUTHWICK, Circuit Judges, and DRELL, District Judge.[*]

PER CURIAM:[**]

Plaintiff-Appellant Billy Ray Tratree ("Tratree") challenges the dismissal of his employment discrimination suit against Defendant-Appellee BP North American Pipelines, Inc. ("BP") partially by summary judgment and partially by judgment as a matter of law. For the following reasons, we affirm in part and vacate and remand in part.

_____

[*] District Judge of the Western District of Louisiana, sitting by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.

Tratree started working for Amoco Pipeline Company ("Amoco"), BP's predecessor, in 1978. When Amoco and BP merged in 1999, he became an employee of BP. From 1995 to 2001, Tratree was a "Measurement Specialist I," tasked with making sure oil kept moving through the section of pipeline running from Mexia to Hufsmith, Texas. Tratree's focus was on the section of pipeline running from North Zulch, a middle-point on the pipeline where he was based, to Hufsmith. According to his supervisors and coworkers Tratree was qualified and did good work.

Tratree alleged that during his employment at Amoco and BP he was the victim of race discrimination. Specifically, he claimed that his coworkers used racial epithets and threatened him, that he was responsible for a larger area of pipeline than his white coworkers, that he was forced to work overtime more often than his white coworkers, and that his district manager granted more training opportunities to whites and consistently fired African-Americans more often than whites. Tratree alleged that he complained to his supervisors about this treatment, but they did nothing.

Tratree also alleged that he was the victim of age discrimination. Tratree's district manager testified that in 2001 Lee Edwards, then president of BP Amoco, remarked at a company meeting that "BP does, in fact, discriminate against age." Also, Tratree presented evidence that a BP personnel representative indicated that Tratree's position was eliminated because of rumors that he was about to retire.

In 1996, Amoco started a "multi-skilling" program designed to train employees to perform a wider variety of functions and therefore reduce the size of the workforce. The "multi-skilling" program created new job classifications. Under the new classification system, Tratree could have trained to become a "Field Specialist." Employees such as Tratree were not required to give up their

old classifications and train for new designations. If Tratree had accepted classification under the new system, he would have received a lower pay rate. Although Tratree was fully qualified as a Field Specialist III, he elected to retain his old designation as Measurement Specialist I. To elevate to the next level, Field Specialist II, Tratree was required to get on-the-job training and a "final check-off" during regularly scheduled work hours. Tratree alleged that Grayson Williams ("Williams"), a white, younger, and less senior employee, was favored over him for training opportunities, and that when he complained that this treatment was discriminatory his complaints were again ignored.

On September 18, 2001, 3 months before Tratree was to become eligible for an early retirement pension, BP informed Tratree that his position was being "eliminated" because the section of pipeline from Mexia to North Zulch was being decommissioned. Three employees were possibly affected by the decommission: Tratree, Bill White, and Williams. Bill White was a white man more senior and experienced than both Williams and Tratree. Williams was headquartered in Mexia, the station at the end of the then-to-be decommissioned pipeline section, and although classified as a Field Specialist II, his job functions were the same as Tratree's. Tratree alleged that in addition to being senior to Williams, he was also more qualified and skilled than Williams.

After Tratree's job was eliminated, Williams continued to work on the section of pipeline that Tratree had worked previously, doing the same work Tratree had done. Tratree alleged that Gleason, his manager, had decided to eliminate Tratree's position because of the rumor that he would take retirement when he turned 50. As part of this plan, Tratree alleged that Gleason trained Williams to be a Field Specialist II so that he would arguably be more qualified than Tratree when Tratree's job was eliminated. Tratree, however, presented evidence that although he was not classified as such, he was and had been performing the work of a Field Specialist II for some time.

3

Under the collective bargaining agreement ("CBA"), employees whose jobs are eliminated are afforded "bumping" rights. Under this process, an employee whose job is eliminated may "bump," or replace, any person with less seniority for whose job he is qualified. Under the "bumping" rules set forth in the CBA, an employee whose job is under an old classification is entitled to "bump" an employee whose job is under a new classification if the employee in the old classification is qualified for that job.[1]

When Tratree received notice that his position had been eliminated, he was given a sheet describing his "bumping" rights. This sheet did not give Tratree the opportunity to "bump" coworkers in new classification designations. Thus, Tratree was not given the opportunity to bump Williams. The notification letter also indicated that Tratree had until September 25, 2001 to exercise his "bumping" rights.[2] Although Tratree understood this deadline, instead of exercising his rights he complained that he was not given the right to "bump" the correct employees, including Williams. On September 24, 2001, BP sent a second "bumping" sheet which modified his options but still did not allow Tratree to "bump" Williams. The union chairman advised Tratree to sign the "bumping" form and begin the grievance and arbitration procedure available pursuant to the CBA, but Tratree refused. Ultimately, Tratree did not exercise his "bumping" options. Consistent with the terms of the CBA, Tratree was terminated on September 27, 2001 for failure to exercise his "bumping" rights.

Tratree filed suit for race discrimination and retaliation under Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e, and Section 1981, 42 U.S.C. § 1981, as well as for age discrimination, retaliation, and failure to

---

[1] The CBA states, in relevant part, that "[a]ny employee whose assignment is discontinued . . . shall exercise his/her demotional rights for any job he/she is qualified within the new or old classification."

[2] The CBA provides that an employee shall have five-business-days to exercise "bumping" rights.

promote under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621. The district court granted BP's motion for summary judgment as to the Title VII and section 1981 claims, as well as the ADEA failure-to-promote claim, but held that Tratree presented sufficient evidence to raise genuine issues of material fact as to his discrimination and retaliation claims under the ADEA. After Tratree presented his case, however, the district court granted BP's motion for judgment as a matter of law and dismissed Tratree's remaining claims. In this appeal, Tratree challenges both the district court's summary judgment order and its judgment as a matter of law.

## II.

We review the district court's grant of judgment as a matter of law and summary judgment de novo. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249–52 (1986); Administaff Cos. v. N.Y. Joint Bd., Shirt & Leisurewear Div., 337 F.3d 454, 456 (5th Cir. 2003); Fiber Sys. Int'l, Inc. v. Roehrs, 470 F.3d 1150, 1160 (5th Cir. 2006). In this review, we must view all evidence in the light most favorable to the nonmovant, drawing all reasonable inferences in his favor, and disregarding all evidence adverse to him that a jury would not be required to believe. Reeves, 530 U.S. at 150–51; Machinchick v. PB Power, Inc., 398 F.3d 345, 349 (5th Cir. 2005). Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). Summary judgment may be affirmed on any ground raised below and supported by the record. Administaff Cos., 337 F.3d at 456. Judgment as a matter of law is appropriate if a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury does not have a legally sufficient evidentiary basis to find for that party on that issue. FED R. CIV. P. 50(a); see also Reeves, 530 U.S. at 150.

III.

A.  Race Discrimination

Under Title VII, it is an "unlawful employment practice for an employer . . . to discriminate against any individual . . . because of such individual's race." 42 U.S.C. § 2000e-2(a)(1).  Section 1981 grants equal rights to "make and enforce contracts," including "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  Id. § 1981(a)–(b).  The district court granted summary judgment to BP on Tratree's claims of race discrimination under Title VII and Section 1981.

This Court recognizes a modified McDonnell Douglas burden shifting framework to analyze indirect claims of discrimination.  McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc., 482 F.3d 408, 411 (5th Cir. 2007); Rachid v. Jack in the Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004).  Under this approach, the plaintiff must first establish a prima facie case of discrimination by showing that (1) he is a member of a protected class, (2) he is qualified for the position at issue, (3) he suffered an adverse employment action, and (4) he was replaced by someone outside the protected class or was treated less favorably than others similarly situated. Okoye v. Univ. of Tex. Houston Health Sci. Ctr., 245 F.3d 507, 512–13 (5th Cir. 2001); Rachid, 376 F.3d at 312; Rubinstein v. Adm'rs of Tulane Educ. Fund, 218 F.3d 392, 399 (5th Cir. 2000) (citing Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981); Ward v. Bechtel Corp., 102 F.3d 199, 202 (5th Cir. 1997)).  If the plaintiff establishes a prima facie case, the burden shifts to the defendant to proffer a legitimate, nondiscriminatory reason for its action. Rachid, 376 F.3d at 312.  If the defendant satisfies its burden of production, the burden then shifts back to the plaintiff to offer sufficient evidence to create a genuine issue of material fact that either (1) the defendant's reason is false and

is a pretext for discrimination, or (2) that although the defendant's reason is true the plaintiff's protected characteristic was a "motivating factor" in its decision. Id.

Tratree, an African American well qualified for his position, suffered an adverse employment action when his position, rather than Williams's position, was eliminated. He therefore established a prima face case of race discrimination. Tratree also produced evidence that his coworkers used racial epithets in his presence, told racist jokes, and threatened him. Additionally, he asserted that he was treated differently from Williams and other white coworkers and that his district manager granted more training opportunities to whites, never hired African-Americans, and consistently fired African-Americans more often than whites.

BP proffered, as a nondiscriminatory explanation for its action that Williams's position was not eliminated because he was designated as a Field Specialist II whereas Tratree had elected not to participate in the new classification, retaining his old classification as Measurement Specialist I. BP asserted that Williams's additional training enabled him to perform more job functions. This explanation is problematic for two reasons. First, the CBA does not indicate that new classification employees will be favored over old classification employees when BP considers which positions to eliminate. Thus, BP's argument that it has a policy of favoring new over old classifications is not grounded in written company policy and is belied by the terms of the CBA. Under the CBA, senior employees in old classifications retain the ability to "bump" employees in new classifications so long as the senior employee is qualified for the position held by the less-senior employee. Although this is most relevant to the issue of whether BP provided the correct "bumping" options to Tratree, it also supports an inference that when BP eliminated Tratree's position and refused to allow Tratree to "bump" Williams, it acted contrary to the terms

and spirit of the CBA that BP shall not favor employees in new classifications over those with old classifications. Second, Tratree presented evidence that he was just as qualified as Williams, if not more so, was performing the work of a Field Specialist II even though he had not formally achieved that designation, and had performed all functions of his job as required on the relevant section of the pipeline for years. Tratree presented additional evidence that he had done this job without any complaint about his work performance, and there was thus no question that he was able to do the job. Tratree has therefore presented genuine issues of material fact as to whether BP's proffered explanation is the actual reason it eliminated his position rather than Williams's. We thus conclude the district court erred in granting summary judgment on this claim.

B. Age Discrimination and Retaliation

The ADEA makes it unlawful to "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The district court granted summary judgment to BP on Tratree's failure-to-promote claim and granted judgment as a matter of law to BP on Tratree's discrimination and retaliation claims under the ADEA.

To establish a prima facie case of failure to promote, a plaintiff must show: (1) he was over forty, (2) was qualified for the position sought, (3) was not promoted, and (4) the position was filled by someone younger or the failure to promote was due to his age. Bennett v. Total Minatome Corp., 138 F.3d 1053, 1060 (5th Cir. 1998). This Court uses the same standards of proof for indirect discrimination claims under the ADEA as it does for Title VII and Section 1981. Roberson v. Alltel Info. Servs., 373 F.3d 647, 651 (5th Cir. 2004). As such, the same burden shifting framework applies to Tratree's ADEA discrimination claims. Id. To establish a prima facie case of retaliation, a plaintiff must show (1) that he engaged in activity protected by the ADEA, (2) that an adverse

employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action.  Banks v. East Baton Rouge Parish Sch. Bd., 320 F.3d 570, 575 (5th Cir. 2003).  Complaining about unfair treatment without specifying why the treatment is unfair, however, is not a protected activity.  See Harris-Childs v. Medco Health Solutions, 169 Fed. Appx. 913 (5th Cir. 2006).

We turn, first, to Tratree's failure-to-promote claim.  Upon our review of the record, we are satisfied that the district court did not err in determining that Tratree did not produce evidence sufficient to establish a prima facie case of failure to promote.  Tratree alleged that BP violated the ADEA because it failed to promote him to Field Specialist II, but by his own admissions he had not completed the on-the-job training necessary to become eligible for the "final check-off" that would have designated him as a Field Specialist II.  As such, Tratree failed to allege one element of the prima facie case: that he was qualified for the position sought.  The district court therefore correctly determined that Tratree failed to state a claim for failure to promote under the ADEA, and the district court's grant of summary judgment on this claim was proper.

We turn, next, to Tratree's age discrimination claims.  Tratree's district manager testified that Lee Edwards, then president of BP, remarked at a company meeting that "BP does, in fact, discriminate against age."  Tratree alleged, in addition to this, that the "multi-skilling" program started by Amoco and continued by BP had an internal goal of discriminating against retirement eligible workers.  Additionally, Tratree points out that a BP personnel representative indicated that Tratree's position was eliminated because of rumors that he was about to retire.  Finally, Tratree stated that although he was at least as qualified as Williams, a younger worker, Tratree's job was chosen for elimination and Williams was retained and continued to do the work that Tratree had previously done.  Tratree also asserted that he had more seniority

than Williams and was fully qualified to do the job, which he had been performing without complaint for many years. Tratree thus presented a prima facie case of age discrimination. As discussed above, Tratree presented additional evidence of age discrimination through the statement by the president of BP that the company discriminates based on age[3] and the statement by the personnel representative that Tratree's job was eliminated because BP thought Tratree would soon retire.

BP proffered the same nondiscriminatory explanation, here, as it did for the race discrimination claims. As discussed above, Tratree has presented a question of material fact as to whether BP's proffered explanation is the actual reason it eliminated Tratree's position. BP's explanation is therefore not sufficient to rebut Tratree's prima facie case under McDonnell Douglas. For these reasons, the district court erred in granting judgment as a matter of law to BP on Tratree's ADEA discrimination claims.

We turn, last, to Tratree's retaliation claims under the ADEA. BP argued, and the district court agreed, that Tratree did not engage in protected activity because he did not put BP on notice that he was complaining of age discrimination when he complained that Williams (a younger, less senior employee) was being given preferential treatment regarding training for and eventual elevation to the position of Field Specialist II. We agree. Tratree complained of unfair treatment directly in comparison to Williams, but he never referred to the discriminatory treatment as age-based. In addition, although Tratree presented evidence that BP thought that he was going to retire, Tratree did not establish when he made his complaints, so that proof is lacking on the essential element of causation between his complaints and the adverse employment action he suffered. For these reasons, we are persuaded that the

---

[3] We need not address whether this statement is a "stray remark" because we deem BP's proffered nondiscriminatory explanation for its actions unpersuasive.

district court did not err in granting judgment as a matter of law on the age retaliation claims.

IV.

The district court properly granted summary judgment dismissing Tratree's failure-to-promote claim under the ADEA and in rendering judgment as a matter of law dismissing Tratree's retaliation claims under the ADEA. The court erred, however, in granting summary judgment dismissing Tratree's race discrimination claims under Title VII and Section 1981 and rendering judgment as a matter of law dismissing his age discrimination under the ADEA. For the reasons stated above, we therefore affirm the dismissal of the failure-to-promote claim and the age retaliation claim, but vacate the dismissal of the race discrimination and age discrimination claims and remand this case to the district court for further proceedings not inconsistent with this opinion.

AFFIRMED in part, REVERSED in part, and REMANDED.