# United States Court of Appeals
# for the Fifth Circuit

———————————

No. 24-50316

———————————

United States Court of Appeals
Fifth Circuit

**FILED**

February 10, 2025

Lyle W. Cayce
Clerk

KELLY DIETRICH,

*Plaintiff—Appellant*,

*versus*

UNITED PARCEL SERVICE, INCORPORATED (OHIO),

*Defendant—Appellee*.

———————————————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:22-CV-86

———————————————————————————

Before ELROD, *Chief Judge*, and JONES and STEWART, *Circuit Judges*.
PER CURIAM:[*]

Plaintiff Kelly Dietrich raises three claims in this civil rights suit against her former employer, United Parcel Service ("UPS"). First, UPS removed her from a driver training program in retaliation for her filing a charge with the EEOC. Second, UPS racially discriminated in its job

———————————————

[*]Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

assignments. Third, UPS fired her in retaliation for her filing a union grievance based on racial discrimination. The magistrate judge granted summary judgment to UPS on all three claims.[1] Finding no error, we AFFIRM.

## I.

Kelly Dietrich began working for UPS on November 3, 2014, as a preloader in League City, Texas. She transferred to Anaheim, California, in 2016, and then to Round Rock, Texas, in January 2018, where she remained employed until August 2021. Dietrich was a bargaining-unit employee subject to the terms and conditions negotiated by her representatives from the International Brotherhood of Teamsters Union.

In February 2018, a supervisor told Dietrich to avoid wearing tank tops at work. She complained to Round Rock manager Mike Lentz, but her complaints of sexual harassment were investigated and determined to be unfounded. In June 2018, Dietrich filed a related charge with the EEOC claiming that she had been sexually harassed. The EEOC dismissed her charge and Dietrich declined to file suit.

On September 12, 2018, Dietrich was evidently involved in an altercation with a colleague. The colleague explained that Dietrich "got in [her] face," "started shouting in [her] face," and "put her forearm on [her] chest." Another colleague explained that Dietrich had "attempt[ed] to push" the first colleague. A supervisor further alleged that Dietrich "start[ed] making false and embarrassing accusations . . . and threatening [his] job title" in hopes of convincing him to take her side. And a third

---

[1] The parties consented to the magistrate judge conducting proceedings and entering final judgment pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73.

colleague described Dietrich as "somewhat of a bully," who "get[s] loud" when she fails to "get what she wants," or "things [do not] go her way."

In October 2018, Dietrich bid for and won an opportunity to participate in a delivery driver training program. James Shipp was assigned as her trainer. He determined that Dietrich had failed to satisfy the program requirements and reported the failure to her manager at the time, Paul Phillips. By early November, Phillips informed Dietrich of her failure to qualify and removal from the program. Dietrich then amended her 2018 EEOC charge to include a retaliation claim.

After Dietrich challenged her disqualification through a union grievance process, UPS allowed her another opportunity to qualify. Dietrich began her second training in December 2018, but Shipp apparently determined—despite making encouraging comments, which led Dietrich to believe she had passed—that she again had failed. Phillips again disqualified and removed Dietrich from the program on January 31, 2019.

Dietrich alleges that Shipp informed her later that Round Rock manager Lentz—whom she had previously complained to about sexual harassment—said she "could not pass the program." She filed a second union grievance. A grievance panel composed of three disinterested Teamster representatives and three disinterested UPS representatives heard testimony from the relevant parties including Shipp, who explained that Dietrich failed to maintain the requisite delivery frequency, missed altogether a number of package deliveries, and demonstrated a "high fluctuation in her performance." The panel sided with UPS and affirmed her disqualification. The Collective Bargaining Agreement ("CBA") required Dietrich to refrain from reattempting the program for a year.

Dietrich continued to work at UPS as a sorter and part-time data capture clerk. On April 17, 2019, Dietrich was involved in a verbal altercation

with a security guard.  UPS issued a notice of intent to suspend her.  Dietrich received the notice in June 2019 after returning from a six-week absence covered by the Family and Medical Leave Act.  According to UPS, she "immediately filed numerous grievances."

Dietrich was involved in a third set of altercations less than a week after returning to work.  She became angry when another employee—not herself—was asked to take packages from one station to another.  That employee felt threatened by Dietrich and reported her conduct.  Another employee reported her that same day for similar behavior.  UPS responded by issuing a notice of intent to discharge Dietrich.  She filed additional grievances but was allowed to continue working as the dispute process played out.

The grievance panel, after considering Dietrich's grievances filed in response to her suspension and discharge notices, reduced the suspension to a final warning, and reduced the discharge notice to a thirty-day unpaid suspension.   Dietrich filed another EEOC charge while serving her suspension.  She complained about her suspension and her January 2019 disqualification from the driver program.  The EEOC dismissed her charge.

Dietrich completed her suspension and UPS made her a full-time combination delivery driver toward the end of 2019.  UPS employs "regular drivers," "combination drivers," and "cover drivers."   These distinct employment categories arise from the CBA.  Regular drivers never work in the warehouse.  Combination drivers primarily deliver packages but can work in the warehouse when there are enough drivers to cover the routes.  Cover drivers primarily work in the warehouse but can deliver packages when more drivers are needed.  Combination drivers usually work from Tuesday to Saturday so that regular drivers can have Saturday off.  Unlike cover drivers, combination drivers are guaranteed eight hours of pay at the

normal driver compensation rate for each day they work—regardless whether they drive.

Relations between Dietrich and other workers soon deteriorated. Dietrich—who is black—complained in April and May of 2020 that her supervisor assigned white employees with less seniority driving routes that she believed should have been assigned to her instead. She identified specific drivers and dates. But three of the drivers were part-time employees. And the record reflects that on the specified dates those part-time drivers either (1) did not work, (2) worked less time as a driver than Dietrich, or (3) were available to drive when Dietrich was not.

Dietrich remained an active combination driver until her termination, except for when she took a second leave of absence at some point between the end of 2020 and August of 2021. Dietrich was assigned to handle packages upon returning from this second leave of absence. She submitted a union grievance to a new manager on August 20 stating that on August 19 he had "g[iven] [her] unreasonable work of packages weighing 77–150 lbs despite knowing that he . . . [had] caused injuries." Dietrich requested a "hearing requiring [him] to answer to his mistreatment of [her], harassment, racism, and retaliation." She cited Articles 37 and 44 of the CBA even though it is Article 36 that prohibits racial discrimination.

Dietrich resumed driving the day after submitting her grievance. She requested a specific route that she was familiar with. Her seniority allowed her to bump another driver from the route. Dietrich requested assistance in making her deliveries and a supervisor sent two drivers to take a total of thirty packages from her. But Dietrich alleges her attempts to deliver the remaining packages were frustrated by her dying phone and computer. At the end of the day, Dietrich returned to the warehouse and unloaded seventy-three undelivered packages that she designated as "missed." Three days later,

No. 24-50316

UPS issued a notice of discharge Dietrich for falsifying delivery records. Dietrich filed another union grievance—at least her sixth (in addition to her two EEOC charges)—which was heard by the union grievance panel on September 22, 2021. The panel heard testimony from Dietrich and others and upheld her termination.

A few months later, Dietrich filed this lawsuit alleging UPS (1) violated Title VII by retaliating against her for filing an EEOC charge in June 2018; (2) violated Title VII by racially discriminating in job assignments; and (3) violated Section 1981 by firing her in retaliation for her August 2021 grievance based on racial discrimination. The magistrate judge's thorough opinion rejected each claim on summary judgment.

## II.

This court "reviews a grant of summary judgment de novo, applying the same standard as the district court." *Luminant Mining Co. v. PakeyBey*, 14 F.4th 375, 379 (5th Cir. 2021). We may affirm "on any ground raised below and supported by the record." *Administaff Companies, Inc. v. N.Y. Joint Bd., Shirt & Leisurewear Div.*, 337 F.3d 454, 456 (5th Cir. 2003) (citing *Yeager v. City of McGregor*, 980 F.2d 337, 339 (5th Cir. 1993)).

Summary judgment is merited when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Davidson v. Fairchild Controls Corp.*, 882 F.3d 180, 184 (5th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). "[T]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tolan v. Cotton*, 572 U.S. 650, 651, 134 S. Ct. 1861, 1863 (2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986)). But conclusory allegations cannot defeat summary judgment. Dietrich must set forth "particular facts" showing "that there is a genuine issue for trial." *Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Compania*

6

No. 24-50316

*Mexicana de Aviacion, S.A. de C.V.*, 199 F.3d 796, 798 (5th Cir. 2000) (citation omitted).

## III.

## A.

First, Dietrich supports her Title VII retaliation claim, which alleges that UPS disqualified her from driver training in January 2019 as a result of her filing an EEOC charge in June 2018. Retaliation is actionable under Title VII where a plaintiff (1) engaged in a protected activity, (2) suffered an adverse employment action, and (3) a causal connection exists between both events. *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577 (5th Cir. 2020) (quotation marks and citation omitted). The magistrate judge granted summary judgment after concluding that Dietrich failed to produce sufficient evidence to create a material fact issue over the requisite causal connection. It reasoned that Dietrich failed to argue or produce evidence tending to show that either Shipp or Phillips knew about her EEOC charge.

Dietrich argues there is a material fact issue as to who made the decision to disqualify her. She believes it was instead former Round Rock manager Lentz, whom she notified about the alleged sexual harassment in February 2018. But the only support for her theory is her declaration, which alleges that Dietrich learned from her trainer that Lentz said she "could not pass the program." This evidence is inconclusive at best. Not only does this single statement fail to prove that Lentz made the disqualification decision, but it does not imply that the decision was retaliatory.

Speculative allegations that Dietrich was retaliated against are not enough to defeat summary judgment. *See Gollas v. Univ. of Tex. Health Sci. Ctr. at Houston*, 425 F. App'x 318, 321 (5th Cir. 2011) (unpublished) (per curiam) ("The nonmovants' burden is not satisfied by 'conclusory allegations, speculation, and unsubstantiated assertions.'") (quoting *Ramsey*

*v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002)). That is especially true because Dietrich must rebut (1) Shipp, who remained adamant in testimony before the grievance panel that he recommended disqualifying Dietrich from the program for deficient performance, and (2) the grievance panel, which approved the disqualification. Accordingly, the magistrate judge correctly concluded that Dietrich has failed to produce adequate evidence that Lentz made a retaliatory decision to disqualify her.[2]

Dietrich does not attempt to argue that Shipp or Phillips knew about her sexual harassment complaints—whether her initial complaint or the 2018 EEOC charge. Indeed, she admitted in her deposition that she had no evidence that either employee knew about her complaints. The magistrate judge thus also did not err by concluding that Dietrich failed to prove the causation required for a Title VII retaliation claim. *See Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 305 (5th Cir. 2020) ("To demonstrate the third element of a prima facie case of retaliation—a causal connection between the protected activity and the adverse action—a plaintiff must demonstrate that the employer's decision was based in part on knowledge of the employee's protected activity.").[3]

_____

[2] Her allegations as to Lentz are further flawed. Dietrich claims that she was removed from the driver training program because of her June 2018 EEOC charge—not her February 2018 internal complaint. But there is no evidence that Lentz knew about her charge. Dietrich states in her brief that "Lentz . . . knew about the Charge." And that Lentz "had been involved in [her] first EEOC complaint." But Dietrich includes no record citation for the first assertion. And her record citation for the second assertion fails to proffer any evidence that Lentz knew about the charge.

[3] The Title VII retaliation claim fails for other reasons, too. For example, Dietrich largely relies on an inference of retaliation from the timing of her complaint and disqualification. But "temporal proximity between . . . knowledge of protected activity and an adverse employment action must be very close." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S. Ct. 1508, 1511 (2001) (quotation mark and citation omitted). The Supreme Court has cited cases that suggest even three months is insufficient. *Id.* (citing

**B.**

Second, Dietrich argues that the magistrate judge erred in granting summary judgment to UPS on her Title VII claim about discriminatory job assignments. Discrimination is actionable under Title VII where a plaintiff (1) is a member of a protected class, (2) was subjected to adverse employment action, (3) was qualified for her job position, and (4) was treated differently from similarly situated employees outside her protected class. *Owens v. Circassia Pharm.*, 33 F.4th 814, 825 (5th Cir. 2022). Dietrich contends that UPS sometimes relegated her to warehouse work, where she had no chance of earning more than eight hours' compensation in a day, while assigning less-senior white drivers to routes where they could earn more. The magistrate judge concluded after reviewing the evidence that Dietrich failed to show she was treated differently from similarly situated employees outside her protected class.

Dietrich identified four coworkers as comparators, three of whom UPS employs as part-time cover drivers rather than full-time combination drivers. Dietrich contends cover drivers are appropriate comparators here because they are "put in the same pool for driving assignments, and the same supervisor chooses who from the pool is going to get what job assignment for the day." But circuit precedent holds that is not enough. Dietrich must prove that her circumstances are "nearly identical" to those of the comparators. *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 426 (5th Cir. 2017). She has never contended that the three cover drivers had comparable "work rule violations" or "disciplinary records." *Sears v. Zions*

_____

*Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997)). Dietrich cannot rely on the four- or five-month period between her complaints of sexual harassment and removal from the driver training program. *See also Ajao v. Bed Bath & Beyond, Inc.*, 265 F. App'x 258, 265 (5th Cir. 2008) (unpublished) (per curiam) (four months is too long).

*Bancorporation NA*, 2022 WL 1800779, at *2 (5th Cir. June 2, 2022) (citation omitted) (applying Texas age-discrimination law, which incorporates the same "nearly identical" standard). Moreover, Dietrich downplays differences in both compensation structure and job responsibilities. As the magistrate judge concluded, cover drivers are not proper comparators.

Dietrich proposed another comparator who worked, as she did, as a combination driver. But five weeks' worth of compensation records submitted below reflect that Dietrich earned more than that employee in all but one week. Dietrich highlights two specific days over a twenty-five workday period where that other employee worked .3 and .47 hours more than she did. The magistrate judge did not err by concluding that such a de minimis differential cannot constitute an adverse employment action. *See Harrison v. Brookhaven Sch. Dist.*, 82 F.4th 427, 431–32 (5th Cir. 2023) (per curiam) (reaffirming a de minimis exception for Title VII).

## C.

Third, Dietrich contends the magistrate judge erred in analyzing her Section 1981 retaliation claim. Retaliation is actionable under Section 1981 where a plaintiff (1) engaged in protected activity by opposing a practice that she reasonably believed to violate Title VII, (2) suffered adverse employment action, and (3) a causal connection exists between both events. *See Feist v. Louisiana, Dep't of Just., Off. of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013); *EEOC v. Rite Way Serv., Inc.*, 819 F.3d 235, 242 (5th Cir. 2016); *Wantou v. Wal-Mart Stores, Tex., L.L.C.*, 23 F.4th 422, 436–37 (5th Cir. 2022). "A vague complaint or general allegation of unfair treatment . . . does not constitute protected activity." *Allen v. Envirogreen Landscape Pros., Inc.*, 721 F. App'x 322, 326 (5th Cir. 2017) (citing cases).

No. 24-50316

Dietrich alleges that UPS violated Section 1981 by terminating her in retaliation for her August 2021 union grievance. The magistrate judge found that her grievance did not constitute protected activity.[4]

Dietrich complained in her August 2021 union grievance that her manager had given her "an unreasonable work of packages weighing 77–150 lbs despite knowing that he . . . caused injuries." She asked that the manager be made to "answer to his mistreatment," including as to his "racism and retaliation." She cited Articles 37 and 44 of the CBA—rather than Article 36, which prohibits racial discrimination. No other information in the grievance supported her accusations of "racism and retaliation."

This grievance is not enough to constitute protected activity. Combination package drivers like Dietrich regularly perform warehouse work, which can include loading and unloading packages. Packages can sometimes weigh up to 150 pounds. Dietrich alleges on appeal that (1) UPS policy required two employees to move any package weighing more than seventy pounds; (2) she sometimes moved packages within that weight range; and (3) she was required to move those packages without assistance from other employees—something white employees were never expected to do. Not only are these accusations undermined by her concession that she expressly refused assistance from coworkers who insisted on helping her with the heavier packages, but Dietrich neglected to include any of these accusations in her August 2021 union grievance. These glaring omissions,

---

[4] Dietrich argues that UPS forfeited any argument that her August 2021 union grievance was not protected activity by failing to include that argument in its motion for summary judgment. But Dietrich suggested in her deposition that her retaliation claim is based on the EEOC charge. This contradicted her complaint. It was not until her response to the motion for summary judgment that she clarified her position. In any event, summary judgment "may be affirmed on any ground raised below and supported by the record." *Administaff*, 337 F.3d at 456 (citing *Yeager*, 980 F.2d at 339).

coupled with threadbare accusations of "mistreatment," "harassment," "racism," and "retaliation," resulted in Dietrich's failing to adequately complain of "conduct that could plausibly be considered discriminatory in intent or effect, thereby alerting [UPS] of its alleged discriminatory practice." *Allen*, 721 F. App'x at 326. *See also Phillips v. Starbucks Corp.*, 624 F. Supp. 3d 530, 548 (D.N.J. 2022) (discussing cases and concluding that baseless "accusations of racism are not protected").

## IV.

For the foregoing reasons, we AFFIRM the judgment of the district court.